IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ANGELICA C. WINN,                                    No. 6:14-cv-00564-HZ

               Plaintiff,                        OPINION & ORDER

    v.

CAROLYN COLVIN,
Commissioner of Social Security,

              Defendant.

Drew L. Johnson
DREW L. JOHNSON, P.C.
1700 Valley River Drive
Eugene, OR 97405

Kathryn Tassinari
HARDER, WELLS, BARON & MANNING, P.C.
474 Willamette, Suite 200
Eugene, OR 97401

      Attorneys for Plaintiff

///

1 - OPINION & ORDER

S. Amanda Marshall
United States Attorney, District of Oregon
Ronald K. Silver
Assistant United States Attorney
U.S. ATTORNEY'S OFFICE, DISTRICT OF OREGON
1000 SW Third Avenue, Suite 600
Portland, OR 97204

Erin F. Highland
SOCIAL SECURITY ADMINISTRATION
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 98104
Seattle, WA 98104

      Attorneys for Defendants

HERNÁNDEZ, District Judge:

      Plaintiff Angelica Winn brings this action for judicial review of the Commissioner's final

decision denying her application for Disability Insurance Benefits (DIB) under Title II of the

Social Security Act. This Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42

U.S.C. § 1382(c)(3)). For the reasons that follow, the Commissioner's decision is reversed and

remanded for an award of benefits.

## PROCEDURAL BACKGROUND

      Plaintiff applied for DIB on November 4, 2010, alleging an onset date of September 5,

2009. Tr. 12. Her application was denied initially and on reconsideration. Tr. 101-107. On

September 25, 2012, Plaintiff appeared, with counsel, for a hearing before an Administrative

Law Judge (ALJ). Tr. 36-78. On December 27, 2012, the ALJ found Plaintiff not disabled. Tr.

12-23. The Appeals Council denied review. Tr. 1-4.

## FACTUAL BACKGROUND

      Plaintiff alleges disability based on dizziness, blackouts (also referred to as "syncope

episodes"), diabetes, depression, short-term memory loss, sleep apnea, and emotional fears of

blackouts happening in public. Tr. 184. Plaintiff testified that the main thing keeping her from

working is her blackouts. Tr. 45. Sometimes she knows a blackout is coming on but most of the

time she does not and so she "hit[s] the floor." Tr. 45. She also testified that she has some

blackouts where she wakes up in a different place and is not sure how she got there. Tr. 52.

Plaintiff testified that she gets dizzy eight to ten times a day and has to lie down and rest three

times a day, on average. Tr. 63-64. Plaintiff believes that her syncope episodes and spells of

dizziness are related to injuries she incurred in a serious motorcycle accident. Tr. 252, 276.

Plaintiff was forty-four years old at the time of the administrative hearing. Tr. 22. She

graduated from high school. Tr. 22. She has past work experience as a mixer-blender, cashier-

checker, and supervisor at a food business. Tr. 22. Because the parties are familiar with the

medical and other evidence in the record, the Court refers to any additional relevant facts in the

discussion section below.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if unable to "engage in any substantial gainful activity by reason

of any medically determinable physical or mental impairment which . . . has lasted or can be

expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

Disability claims are evaluated according to a five-step procedure. See e.g., Valentine v.

Comm'r, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving

disability. Id.

In the first step, the Commissioner determines whether a claimant is engaged in

"substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S.

137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner

determines whether the claimant has a "medically severe impairment or combination of

3 - OPINION & ORDER

impairments." Yuckert, 482 U.S. 137 at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 14. Next, at steps two and three, the ALJ determined that Plaintiff has severe impairments of episodic syncope of uncertain etiology but possibly resulting from diabetes and/or a sleep disorder, Type II diabetes mellitus, and sleep disorder with restless leg syndrome, but that the impairments did not meet or equal, either singly or in combination, a listed impairment. Tr. 14-20. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform light exertional work as defined in the regulations except for

standing, walking, and sitting each for six hours a day out of an eight-hour work setting. Tr. 20.

In addition, the ALJ concluded that Plaintiff should have no exposure at work to hazards or

unprotected heights. Tr. 20. With this residual functional capacity, the ALJ determined that

Plaintiff is unable to perform any of her past relevant work. Tr. 21. However, at step five, the

ALJ determined that Plaintiff is able to perform jobs that exist in significant numbers in the

economy, such as photocopying machine operator, office helper, and mail clerk. Tr. 23. Thus the

ALJ determined that Plaintiff is not disabled. Tr. 23.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner

applied proper legal standards and the findings are supported by substantial evidence in the

record. 42 U.S.C. § 405(g); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th

Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a

preponderance." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009)

(quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." Id.

The court must weigh the evidence that supports and detracts from the ALJ's conclusion.

Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d

715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the

Commissioner. Id. (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); see

also Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the

evidence are insignificant if the Commissioner's interpretation is a rational reading. Id.; see also

Batson, 359 F.3d at 1193. However, the court cannot not rely upon reasoning the ALJ did not

assert in affirming the ALJ's findings. Bray, 554 F.3d at 1225-26 (citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)).

## DISCUSSION

Plaintiff contends that the ALJ erred by: (1) failing to give clear and convincing reasons for rejecting Plaintiff's testimony; (2) failing to credit the opinion of Plaintiff's treating physician; (3) failing to credit the opinions of Plaintiff's treating mental health providers; (4) failing to credit lay witness evidence; and (5) failing to include depression and PTSD as "severe" impairments at step two or, in the alternative, to obtain neuropsychological testing.

## I.    Plaintiff's Credibility

Plaintiff contends that the ALJ failed to provide legally sufficient reasons for rejecting her testimony. In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis. 20 C.F.R. § 404.1529. First, the ALJ determines whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of symptoms. Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996). If such evidence exists, and barring affirmative evidence of malingering, the ALJ must give clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. Id. at 1284; see also Lingenfelter, 504 F.3d at 1036.

The ALJ may consider many factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. Tommasetti v.

Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008). Where the ALJ's credibility findings are supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002). However, a general assertion that plaintiff is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); see also Morgan, 169 F.3d at 599.

Here, the ALJ found Plaintiff "not fully credible." Tr. 21. He concluded that Plaintiff's inconsistent statements and daily activities undermined her credibility. Tr. 18. He found that, while Plaintiff has syncopal episodes, the record did not support the frequency alleged or the allegation that she needs to lie down two times during the day for 30-60 minutes. Tr. 19.

The ALJ afforded "great weight" to the assessment of consulting neurologist Dr. Hamby, who met with Plaintiff on October 12, 2011 and reviewed her entire medical record. Tr. 16. Plaintiff told Dr. Hamby that she passes out twice per week and that these syncopal episodes have occurred at this frequency since they began in 2008. Tr. 18, 357. However, Dr. Hamby noted that Plaintiff's report conflicted with the following:

> In August 2009, Plaintiff reported to neurologist Dr. Balm that she had eight syncopal spells in the past year. Tr. 355.
>
> In November 2010, Plaintiff reported a two-year history of weekly to monthly blackouts since her accident. Tr. 356.
>
> In April 2011, Plaintiff reported that, with medication, blackouts occurred three or four times a month. Without medication, Plaintiff reported that blackouts occurred up to eight times per month. Tr. 489.

The ALJ also found an inconsistency in Plaintiff's Disability Report, Form SSA-3368, where she stated that she stopped working because her employer moved to another state, not because of a disability. Tr. 18.

In addition, the ALJ found that Plaintiff's activities of daily living undermined her credibility. Tr. 22. The ALJ characterized Plaintiff's daily activities as "inconsistent with disability due to any mental impairment." Tr. 18. A medical chart note from January 5, 2009, indicated that Plaintiff injured herself by "scrubbing her bedroom for the last week, doing a lot of repetitive activities." Tr. 331. In addition, Plaintiff said she was doing well and was much less stressed after her company closed and laid her off, yet elsewhere Plaintiff stated that she stopped working because of her conditions and because she was having a hard time. Tr. 18-19. Finally, the ALJ noted that Plaintiff cared for her ill father and two grandchildren. Tr. 19.

The Court does not consider the ALJ's reasons to be clear and convincing reasons to discredit Plaintiff's testimony. As to the frequency of Plaintiff's syncopal episodes, Plaintiff reported that they occurred more or less frequently over a period of three to four years. Taken together, Plaintiff's reports to her medical providers support her testimony that she has blackout episodes that cause her to fall, on average, one to two times a week, and that she has episodes where she forgets where she is about one to two times a month. Tr. 55. The fact that Plaintiff's episodes varied in frequency over a period of years does not undermine her credibility. See Garrison v. Colvin, 759 F.3d 995 1017 (9th Cir. 2014) (cycles of improvement and debilitating symptoms occur commonly); see also Social Security Ruling 96-7p, July 2, 1996 ("[T] he lack of consistency between an individual's statements and other statements that he or she has made at other times does not necessarily mean that the individual's statements are not credible. Symptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time, and this may explain why the individual does not always allege the same intensity, persistence, or functional effects of his or her symptoms.").

Similarly, nothing in Plaintiff's reports regarding the reasons she stopped working is inconsistent. The full text of Plaintiff statement that the ALJ references is as follows: "I was trying to work but was having hard time, then I had a bad spell at work and left in Ambulance to sacred heart hospital. The company closed 9 5 2009 but I was about to loose [sic] my job anyway due to being a liability to myself and others in the work place." Tr. 184. Plaintiff's statement makes clear that she stopped working because her employer moved, but that she would have had to stop anyway due to her alleged disability. Plaintiff's coworker Kenneth Eldridge, corroborates Plaintiff's account of her final year of work, stating that Plaintiff passed out at work, was prone to dizzy spells, and reduced her work hours. Tr. 239. While the Court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation", see Andrews, 53 F.3d at1039-40, the Court does not find it rational to interpret Plaintiff's testimony as inconsistent and therefore a negative indicator of Plaintiff's credibility.

As to Plaintiff's activities of daily living, the fact that Plaintiff exerted herself once by scrubbing her bedroom has no bearing on her allegations of blackouts and dizziness. Nor does the fact that she felt less stressed after she was laid off. Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination. Ghanim v. Colvin, 763 F.3d 1154, 1165 (9th Cir. 2014). However, the Court finds it difficult to see how a single incident of housework, in which Plaintiff injured herself, can be the basis for discrediting her testimony about blackouts and dizziness. The two are not mutually exclusive. As to Plaintiff feeling better after she was laid off, that does not constitute substantial evidence of daily activities in conflict with her testimony. Finally, the fact that she cared for her father and grandchildren does not, by itself, contradict any of Plaintiff's reports of her alleged disability. The medical chart note cited by the ALJ that indicates Plaintiff cared for her father

and grandchildren also indicates that she continued to have syncopal episodes. Tr. 482, 486. As

the Ninth Circuit has made clear, "the mere fact that a plaintiff has carried on certain daily

activities…does not in any way detract from her credibility as to her overall disability." Orn v.

Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertifan v. Halter, 260 F.3d1044, 1050 (9th

Cir. 2001). Therefore, the Court finds that the ALJ did not provide clear and convincing reasons

to discount Plaintiff's testimony.

## II.        Treating Physician Dr. Gage

Plaintiff contends that the ALJ erred in failing to credit the opinion of Dr. Gage,

Plaintiff's treating physician since 2005. In a March 2012 letter, Dr. Gage stated that Plaintiff

had a problem with syncope since 2009 and that "at this point she is unable to drive and unable

to work due to the unpredictability of these episodes." Tr. 390. Dr. Gage also stated that Plaintiff

had post-traumatic stress disorder, severe depression, dysthymia, sleep disturbance, diabetes, and

restless leg syndrome. Tr. 390.

If a treating physician's opinion is supported by medically acceptable techniques and is

not inconsistent with other substantial evidence in the record, the treating physician's opinion is

given controlling weight. Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); see also

20 C.F.R. § 404.1527(d)(2). The ALJ may only reject an uncontradicted medical opinion by

providing "clear and convincing" reasons supported by substantial evidence in the record.

Holohan, 246 F.3d at 1202. On the other hand, if a treating physician's opinion is contradicted,

the ALJ can rely on the contrary opinion of a non-treating physician only if the ALJ provides

"specific and legitimate" reasons. Id. The ALJ can meet that burden "by setting out a detailed

and thorough summary of the facts and conflicting clinical evidence, stating his interpretation

thereof, and making findings." Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988). The

treating physician's opinion, however, is still entitled to deference and must be weighed using the factors provided in 20 C.F.R. § 404.1527. Id.; see also Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007). The same standards apply "for rejecting a treating doctor's credible opinion on [the ultimate issue of] disability." Reddick, 157 F.3d at 725.

Here, the ALJ improperly discounted Dr. Gage's opinion regarding Plaintiff's syncopal episodes. Contrary to the ALJ's conclusions, Dr. Gage's documentation of Plaintiff's syncopal episodes is consistent with the medical record. According to the ALJ, "[t]he test results and assessments of the consulting specialists raise substantial doubts regarding the cause and frequency of reported blackout symptoms." Tr. 17. Notably, neither the ALJ nor any of the medical examiners consulted in this case question that Plaintiff has syncopal episodes. Therefore, the fact that test results have not determined the cause of these episodes does not diminish Dr. Gage's findings that the episodes occurred. Furthermore, because Dr. Gage's findings as to frequency were based on Plaintiff's credible reporting, the ALJ erred in discounting them.

The ALJ found that Dr. Gage's opinion that Plaintiff was unable to work was contradicted by the opinion of consulting neurologist Dr. Hamby. The ALJ noted that Dr. Hamby reviewed the entire record and provided a detailed, well-supported evaluation. Tr. 16. Dr. Hamby found that Plaintiff could work without limitation, except that she should avoid working at heights and around heavy machinery or other hazardous environments. Tr. 360, 390. While Dr. Gage and Dr. Hamby disagree about the impact of Plaintiff's syncopal episodes on her ability to work, there is no conflict as to the existence of her symptoms.

Similarly, the ALJ noted "negative test results obtained during extensive clinical testing, and contrary opinions reported by neurological and physiological evaluators." Tr. 17. Once again, these test results and opinions do not provide a basis for discounting Dr. Gage's findings

of the existence of Plaintiff's syncope, even though they underscore the lack of consensus regarding the cause of Plaintiff's episodes.

As to Plaintiff's mental impairments, the ALJ provided specific and legitimate reasons to discount Dr. Gage's opinion regarding "any medically determinable neurological or psychological impairment," including PTSD or depression. Tr. 16. The ALJ noted that Plaintiff underwent extensive clinical testing, including EKGs, Cardiac Stress Echocardiogram, three or four awake and/or asleep ECGs, and a MRI brain head scan; yet the neurological and physiological evaluators failed to recognize Plaintiff's alleged mental limitations or <u>mentally induced</u> syncopal/blackout events. Tr. 18 (emphasis added). The ALJ gave weight to reviewing and evaluation physicians Dorothy Anderson, Ph.D.; Paul Rethinger, Ph.D.; Michael R. Balm, M.D.; Nahara Jakumar, M.D.; Paul Motika, N.D.; and Dr. Hamby. Tr. 17.

"An ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1216 (9th Cir. 2005); <u>see generally</u> <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1148 (9th Cir. 2001) (a physician's opinion "with respect to the existence of an impairment or the ultimate determination of disability" is not binding on an ALJ). Taken as a whole, the ALJ provided substantial evidence for discounting Dr. Gage's opinion that Plaintiff suffers from mental impairments. However, the ALJ did not provide substantial evidence for discounting the portion of Dr. Gage's opinion that stated that Plaintiff had problems with syncope.

### III.    Treating Mental Health Providers

Plaintiff argues that the ALJ erred in his consideration of treating mental health providers Charyl A. Haun, MA QMHP; Elizabeth Perrine, MA QMHP; and Ruthann Duncan, LMFT. The ALJ did not accept any of their residual functional capacity assessments because they were based

entirely on the subjective reports of Plaintiff and her husband. Tr. 17. The ALJ also noted that they "provided no plausible explanation as to how they arrived at their functional assessments." Tr. 17. In addition, because they are not medically acceptable sources as defined by the regulations, they are unable to make a diagnosis. Tr. 17. While Plaintiff points to a few objective findings by Ms. Duncan and Ms. Perrine, their assessments overall are inconsistent with the medical source opinions that are entitled to greater weight.

The ALJ may discount testimony from these "other sources" if the ALJ "gives reasons germane to each witness for doing so." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (internal quotations and citations omitted). Ms. Haun, Ms. Perrine, and Ms. Duncan are "other sources." See SSR 06-03P, available at 2006 WL 2329939 (defining "other sources"). The ALJ provided the germane reasons listed above to discount the mental health providers' testimony. In addition, the ALJ provided Plaintiff an opportunity after the hearing to supplement the record as to her mental health providers, but Plaintiff did not do so. Tr. 18. The Court finds that the ALJ's decision to discount the mental health therapists' opinions is supported by substantial evidence.

## IV.   Lay Witnesses

Plaintiff contends that the ALJ erred in failing to credit the opinions of seven lay witnesses who submitted letters in support of Plaintiff. The ALJ determined that the statements had "little probative value" as to Plaintiff's work capabilities, even though they were descriptive of their perceptions of Plaintiff. Tr. 19. The behavior reported by the lay witnesses was "not fully consistent with the psychiatric, medical, work history, and other credible evidence of record." Tr. 19. The ALJ considered the reports as a "plea for sympathy" rather than objective statements of Plaintiff's true limitations in a work setting. Tr. 19.

Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account. Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993). Competent lay witness testimony cannot be disregarded without comment and in order to discount competent lay witness testimony, the ALJ "must give reasons that are germane to each witness." Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012) (quoting Dodrill, 12 F.3d at 919). However the ALJ is not required to discuss every witness's testimony on an individualized, witness-by-witness basis. Molina, 674 F.3d at 1114. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness. Molina, 674, F. 3d at 1114.[1]

One of the ALJ's germane reasons is that Plaintiff's lay witnesses recount several syncopal episodes and other incidents that are not reflected anywhere in the medical record. For example, Plaintiff's daughter, Lisa Lamb, recounts an incident where she found Plaintiff unconscious on the floor on September 27, 2011. Tr. 237. Plaintiff's son-in-law Robert Lamb confirmed the event. Tr. 244. Yet, the ALJ notes that before and after that alleged event, Plaintiff made no report to her primary care physician. Similarly, her former coworkers recounted in letters from September and October 2011 that Plaintiff had at least two blackouts, including one at work, and that she was never again able to work an entire shift. Tr. 233, 239. Yet, there is no such event in Plaintiff's medical record. Tr. 19.

---

[1] The Court in Molina notes that: "The applicable regulations are in accord; they require the ALJ to consider testimony from family and friends submitted on behalf of the claimant, see 20 C.F.R. §§ 404.1529(c)(3), 404.1545(a)(3), but do not require the ALJ to provide express reasons for rejecting testimony from each lay witness, see id.; see also SSR 06–03p (recognizing that 'there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision')".

Plaintiff responds that "she did not report each specific episode to her doctor." Tr. 19. However, she did tell Dr. Gage in September of 2011 that she had been having one or two episodes a month and that she "continues to pass out completely." Tr. 482. In addition, Dr. Hamby's report notes a syncopal episode at work. Tr. 354. Therefore, the lay witness testimony is actually consistent with medical evidence and it provides detail as to Plaintiff's inability to deal with the demands of work.

The ALJ also spends a substantial amount of time describing Plaintiff's work history, including time during which she alleges she suffered from syncopal episodes. Tr. 19. The ALJ details her job duties, salary, and exertion level as support for the assertion that the lay witness statements are not credible. However, none of this information contradicts the witnesses' assertion that she had syncopal episodes at work and that there was concern about her getting injured.

Furthermore, the ALJ does not address the statement of Plaintiff's husband, who wrote that Plaintiff had to be supervised in some activities such as showering[2] and that Plaintiff's memory had decreased. Tr. 235. He wrote that Plaintiff has blackout spells once a week which cause her to have to rest for 1-3 hours. Tr. 235. He also stated that Plaintiff could no longer drive. Tr. 235. The ALJ also does not address the statement of Plaintiff's sister who wrote about Plaintiff's "fainting spells," anxiety, and depression. Tr. 240. Nor does he address Mary Pace's statement that she had found Plaintiff on the floor after a blackout two or three times. Tr. 234.

In sum, the ALJ fails to provide legally sufficient reasons to discount the lay witnesses' testimony.

---

[2] Plaintiff's husband's anecdote about Plaintiff's falls while showering is supported by the record in Dr. Gamby's report. Tr. 356.

## V.    Step Two Finding

Plaintiff makes a cursory argument that the ALJ erred by failing to include depression and PTSD as "severe" impairments at step two, or in the alternative, to obtain neuropsychological testing. However, the only sources Plaintiff cites are Dr. Gage and the mental health therapists, whose mental impairments diagnoses were discredited for the reasons listed above. Plaintiff does not set forth any other evidence which would support the diagnosis and findings of a listed impairment.

The ALJ provided substantial evidence in a detailed explanation of his decision not to consider any of Plaintiff's mental impairments as "severe." Tr. 14-20. As to the duty to obtain a consultative examination, "[a] n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001). Plaintiff does not establish any ambiguity in the record as to her alleged depression and PTSD.

## VI.    Remand for an award of benefits

Plaintiff argues that when crediting the evidence as true, she is entitled to an award of benefits. The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. Strauss v. Comm'r of Soc. Sec. Admin., 635 F.3d 1135, 1138–39 (9th Cir. 2011) (quoting Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)).

The Ninth Circuit Court of Appeals has devised a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion;
> (2) the record has been fully developed and further administrative proceedings would serve no useful purpose; and
> (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1100-01 (9th Cir. 2014).

Here, the ALJ failed to provide legally sufficient reasons to reject Plaintiff's testimony or the testimony of the lay witnesses. Furthermore, the ALJ improperly rejected the opinion of Dr. Gage as to the existence of Plaintiff's syncopal episodes.

Notwithstanding the lack of a diagnosis of the cause of Plaintiff's syncopal episodes, the record has been fully developed and no useful purpose would be served by further administrative proceedings. Defendant argues that further proceedings would allow the ALJ to appoint a medical expert "to review the longitudinal record and give testimony on these issues." Def.'s Br. 21. However, there is no conflict in the record regarding the existence of Plaintiff's syncope. Therefore, on that point, which is dispositive as to the question of Plaintiff's disability, the record has been fully developed.

Finally, if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. Specifically, this Court credits as true Plaintiff's testimony, the lay witness testimony, and Dr. Gage's opinion as to Plaintiff's syncopal episodes. Taken together, the evidence supports Plaintiff's testimony that, on average, she has syncopal episodes two to four times a month. Tr. 55. The VE testified that a person who suffered

from blackouts even twice a month during work hours could not work. Tr. 71. Accordingly, Plaintiff satisfies the requirements of the credit-as-true standard.

Defendant argues that this Court should nonetheless decline to award benefits because the record "as a whole creates serious doubt that [Plaintiff] is, in fact, disabled." Def.'s Br. 21 (citing Garrison, 759 F. 3d at 1021). The Court disagrees. The record as a whole demonstrates that Plaintiff suffers from syncopal episodes at least twice a month. Because the VE unequivocally stated that such a person could not work, the Court has no reason to seriously doubt that Plaintiff is disabled.

## CONCLUSION

The Court concludes that the ALJ failed to offer clear and convincing reasons for discounting Plaintiff's credibility, failed to credit the opinions of treating physician Dr. Gage, and failed to give legally sufficient reasons for rejecting lay witnesses' testimony. The Commissioner's decision is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for an immediate award of benefits.

IT IS SO ORDERED.

Dated this _____ day of _____, 2015

MARCO A. HERNÁNDEZ
United States District Judge